IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| VAMA F.Z. CO., | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellant, | § | No. 487, 2019 |
| | § | |
| v. | § | |
| | § | Court Below – Superior Court |
| PACIFIC CONTROL SYSTEMS | § | of the State of Delaware |
| (L.L.C.) AND DILIP RAHULAN, | § | |
| | § | |
| Defendants Below, | § | C.A. No.: N18J-07-985 |
| Appellees. | § | |

Submitted: June 17, 2020
Decided: August 26, 2020

Before **SEITZ**, Chief Justice; **VALIHURA** and **MONTGOMERY-REEVES**, Justices.

## **ORDER**

After careful consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)     This appeal arises from Appellant's, Vama F.Z. Co. ("Vama"), efforts to domesticate a foreign judgment against Appellee, Pacific Control Systems ("Pacific"), under Delaware's Uniform Foreign Country Money Judgments Recognition Act (the "Recognition Act").[1] The Superior Court declined to recognize the foreign judgment under the doctrine of *res judicata*, among other reasons.  For

---

[1] 10 *Del. C.* § 4801 *et seq.*

the reasons set forth below, we agree that the doctrine of *res judicata* barred the Superior Court from recognizing the foreign judgment, and we affirm the Superior Court on that basis.

(2)   Pacific is a technology company headquartered in Techno Park, Dubai. In 2014, Pacific sought to build a data center and approached Vama to help finance the project. Vama loaned Pacific a portion of the money to fund the data center.[2] But in early 2016, Pacific began experiencing financial problems and defaulted on the loan. On May 1, 2016, Dilip Rahulan, the chief executive officer and executive chairman of Pacific, traveled to the United States, where he has remained.[3]

(3)   During this time, Pacific retained a restructuring team to review potential claims from creditors.[4] In May 2016, Vama notified Pacific that Vama had a claim against Pacific for failure to repay the data center loan.[5] Pacific's representatives assured Vama that its funds were safe and that Pacific would pay back the entirety of the loan, but Pacific never repaid the loan.[6]

(4)   When those collection efforts failed, Vama sought and received a provisional attachment in the Dubai Court of First Instance. Vama also initiated a civil proceeding in the Dubai Court of First Instance against Pacific and Rahulan

---

[2] Appendix to the Opening Br. 316-17 (hereafter "A_").
[3] A777.
[4] A337.
[5] A319.
[6] A18-25.

(the "Defendants") to execute the provisional attachment and obtain a final judgment for the failure to repay the loan. On August 14, 2016, Vama filed a summons for service addressed to Pacific and Rahulan at "Dubai, Bur Dubai, Sheikh Zayed Street, TP 101423, Techno Park Tel: 048869000, mobile: 0504591364, Email:dilip@pacificcontrols.net."[7] On August 23, 2016, the Dubai Court delivered notice of the action; the proof of service states that the court's agent delivered notice to "Adeel Gawanico, in her capacity as receptionist" at "Bur Dubai-Sheikh Zayed Road-Guidance Phone No: 0506539145."[8] But Pacific and Rahulan did not participate in the proceedings in the Dubai Court of First Instance. On January 17, 2017, the Dubai Court of First Instance entered default judgment against Defendants, confirming the provisional attachment and ordering Defendants to pay AED 21,852,500 plus interest and attorneys' fees (the "Dubai Judgment").[9] On June 11, 2017, Pacific and Rahulan appealed the Dubai Judgment, arguing that service was improper. But the Dubai Court of Appeal denied Pacific and Rahulan's appeal as untimely because the right to an appeal was "extinguished" thirty days after the Dubai Judgment was entered.[10]

---

[7] A38.
[8] A41, 43.
[9] A100-19.
[10] A141-46.

(5)     On October 18, 2018, Vama initiated an action in the Superior Court of Delaware to domesticate the Dubai Judgment under the Recognition Act. Pacific and Rahulan objected to recognition in Delaware and moved to vacate the Dubai Judgment on the grounds that the judgment was a product of fraud and did not comply with due process. The matter was assigned to a Commissioner, who held a preliminary hearing on December 14, 2018,[11] and an evidentiary hearing on May 16, 2019.[12] At the evidentiary hearing, Rahulan testified as Pacific's CEO, denied his awareness of an underlying debt to Vama, and stated that neither he nor Pacific was properly served in the Dubai Judgment proceedings. In fact, Rahulan testified that he first learned of the Dubai Court proceedings in May of 2017, after the Dubai Judgment was entered.[13]

(6)     Meanwhile, on November 8, 2018, Vama initiated the process to recognize and domesticate the Dubai Judgment under New Jersey's Uniform Foreign Country Money Judgments Recognition Act.[14] After the completion of discovery in the New Jersey action, Defendants filed a motion for summary judgment as to nonrecognition of the Dubai Judgment.[15]

---

[11] Appendix to the Answering Br. 1-40 (hereafter "B_").
[12] A423-661.
[13] A191-92, 496, 779.
[14] A779; N.J. Stat. Ann. § 2A: 49A-16.6 *et seq.*
[15] A777.

(7) On February 27, 2019, while the Delaware and New Jersey recognition proceedings were ongoing, the Dubai Court of First Instance removed Rahulan as chairman of Pacific because of widespread fraud and mismanagement (the "Rahulan Removal Order").[16] In May and June of 2019, Vama submitted two letters to the Superior Court requesting that the proceedings be re-opened to address the Rahulan Removal Order. Vama emphasized that Rahulan's removal called into question Rahulan's ability to testify on behalf of Pacific during the Delaware proceedings.[17] But the Commissioner did not grant this relief. Instead, on August 30, 2019, the Commissioner granted Pacific and Rahulan's motion to dismiss and/or vacate the Dubai Judgment (the "Commissioner's Opinion"). Relying largely on Rahulan's testimony, the Commissioner's Opinion determined that Defendants did not receive notice of the Dubai proceedings.[18] The Commissioner also noted that Vama "never showed the Dubai Court any evidence of an underlying debt obligations" by Pacific to Vama.[19]

(8) On September 16, 2019, Vama filed written objections to the Commissioner's Opinion.[20] In its objections, Vama argued that the Commissioner improperly shifted the burden of proof to Vama to demonstrate proper notice and

---

[16] A212-28.
[17] A662-91.
[18] Opening Br. Ex. 1.
[19] *Id.* at 18.
[20] A744-74.

the validity of Pacific's debt to Vama.[21]  Vama also requested a status conference and notified the Superior Court that it would seek to obtain and submit additional evidence.[22]  Meanwhile, on September 24, 2019, the New Jersey court granted Defendants' motion for summary judgment (the "New Jersey Order") because of a lack of due process in the Dubai proceedings.[23]  Defendants filed their opposition to Plaintiff's objections in Delaware on September 30, 2019, and attached the New Jersey Order.[24]

(9)  Thereafter, the Superior Court denied Vama's requests for a status conference and to submit additional evidence.  Instead, on October 22, 2019, the Superior Court held that that the New Jersey Order barred Vama's claim in Delaware under the doctrine of *res judicata*.[25]  Further, the Superior Court held that dismissal was appropriate because the New Jersey Order conflicted with the Dubai Judgment.[26]  Vama filed a timely Notice of Appeal challenging the Superior Court Order.

(10)  This Court reviews the trial court's interpretation of the law, including its holding that *res judicata* bars a claim, *de novo*.[27]  We review factual findings for

---

[21] *Id.*
[22] A787-89.
[23] A781-86.
[24] B434-79.
[25] Opening Br. Ex. 2.
[26] *Id.*
[27] *RBC Capital Mkts., LLC v. Educ. Loan Trust IV*, 87 A.3d 632, 639 (Del. 2014).

whether such findings were "clearly erroneous or not the product of an orderly and logical deductive reasoning process."[28]

(11)  "The doctrine of *res judicata* states that a final judgment upon the merits rendered by a court of competent jurisdiction may be raised as a bar to the maintenance of a second suit in a different court regarding the same matter between the same parties."[29]  The doctrine of *res judicata* bars a claim when

> (1) the original court had jurisdiction over the subject matter and the parties; (2) the parties to the original action were the same as those parties, or in privity, in the case at bar; (3) the original cause of action or the issues decided was the same as the case at bar; (4) the issues in the prior action must have been decided adversely to the appellants in the case at bar; and (5) the decree in the prior action was a final decree.[30]

(12)  On appeal, Vama's challenges to the Superior Court's *res judicata* analysis focus solely on whether the issues in the New Jersey and Delaware actions are the same.  Vama argues that the New Jersey Order does not bar its Delaware claim under *res judicata* because the Delaware litigation concerns different legal questions than those addressed by the New Jersey court.[31]  Specifically, Vama contends that "[t]he removal of [] Rahulan from [Pacific] is a dispositive issue" that "fundamentally alter[s] both [Pacific's] legal theory in opposition to the recognition

---

[28] *Kahn v. Lynch Commc'ns Sys., Inc.*, 638 A.2d 1110, 1114 (Del. 2002).
[29] *Mott v. State*, 49 A.3d 1186, 1189 (Del. 2012).
[30] *Dover Historical Soc., Inc. v. City of Dover Planning Comm'n*, 902 A.2d 1084, 1092 (Del. 2006).
[31] Opening Br. 34-37.

7

of the Dubai Judgment in Delaware and Vama's legal theory with respect to its ability to counter Defendants' efforts to vacate the Dubai Judgment in Delaware."[32] For example, according to Vama, Pacific's only evidence to support nonrecognition in both New Jersey and Delaware was Rahulan's testimony that neither of the Defendants received proper notice of the Dubai action.[33]  But, the Removal Order significantly undermined Rahulan's credibility and stripped Rahulan of any authority to speak on behalf of Pacific in either jurisdiction.  Because no one was authorized to speak on behalf of Pacific, Vama argues that it was entitled to default judgment against Pacific in both jurisdictions.  Vama did not discover the Removal Order until after the Delaware evidentiary hearing and argues that neither the Superior Court nor the New Jersey court fully considered these new issues.[34]

(13)   When "new facts give rise to a quite different legal theory . . . that was neither presented nor decided in the first [final decree]," *res judicata* does not apply.[35]  But that is not the case here.  Even accepting, *arguendo*, Vama's assertion that the Superior Court would exclude Rahulan's testimony, that exclusion would not change the court's *res judicata* analysis because it does not alter the key legal theories that the Superior Court considered.

---

[32] *Id.* at 35-36.
[33] A496.
[34] Opening Br. 2, 35-36.
[35] *Dover Historical Soc.*, 902 A.2d at 1092.

8

(14) Vama's theory erroneously presumes that Rahulan's testimony provided the only evidence supporting the due process challenges. The New Jersey court based its ruling on its examination of documentary evidence presented by Vama, not on Rahulan's testimony.[36] In analyzing due process, the New Jersey court noted that "the only documents presented to establish notice of [the Dubai] litigation" was "the alleged proof of service upon both Defendants."[37] But, "[t]he alleged notice to Rahulan states that something was served on 'Adeel Gawanico in her capacity as receptionist.'"[38] As such, "Vama must take the position that if this is valid service, that American due process standards are met if Plaintiff serves a summons and complaint against a person upon a receptionist at that person's place of employment. That clearly does not meet our sense of due process."[39] With respect to Pacific, the New Jersey court held that New Jersey law "requires service of process of a corporation on an officer, director, trustee or managing or general agent, someone designated by law or someone authorized to accept service or in charge of that office."[40] In New Jersey's "system of due process, service cannot be

---

[36] A783-86.
[37] A784-85.
[38] A785.
[39] *Id.*
[40] *Id.*

accomplished by dropping off papers at the reception door."[41]  Thus, the New Jersey

court based its ruling on the proof of service document, not Rahulan's testimony.

(15)  Vama submitted the same proof of service document to the Superior

Court that it presented to the New Jersey court, and Delaware applies largely the

same notice requirements as New Jersey.[42]  Thus, even if Rahulan's testimony were

excluded in its entirety, the Superior Court would still need to examine the same

proof of service evidence and resolve the same due process issue that the New Jersey

Order resolved against Vama.[43]  Vama fails to explain how further consideration of

the Rahulan Removal Order would present new facts that would fundamentally alter

the due process analysis that bars his claim.  Therefore, the Superior Court did not

err in applying *res judicata* despite the existence of the Rahulan Removal Order.

(16)  Vama next argues that *res judicata* is inapplicable because New Jersey

applies a different burden of proof under the Recognition Act.[44]  Both New Jersey

and Delaware apply nearly identical versions of the Recognition Act.[45]  In both

states, "[a] party resisting recognition of a foreign-country judgment shall have the

---

[41] *Id.*

[42] *Compare* N.J. Ct. R. 4:4-4(a)(1),(6) *with* Del. Super. Ct. Civ. R. 4(f)(1)(I), (III) and *Alston v. Hudson, Jones, Jaywork, Williams and Liguori*, 2000 WL 275673, at *2 (Del. Mar. 7, 2000).

[43] A781-86.

[44] Opening Br. 36-37.

[45] *Compare* N.J. Stat. Ann. § 2A:49A-16.4, with 10 *Del. C.* § 4803.

burden of establishing that a ground for nonrecognition . . . exists."[46] In New Jersey, however, when the foreign judgment is a default judgment, the burden of proof shifts to the plaintiff to prove that the defendant was served according to the laws of the origin country.[47] By contrast, no such burden shifting occurs in Delaware.[48] Applying its version of the Recognition Act, the New Jersey court determined that "[b]ecause the [Dubai] judgment was entered without Defendant's participation," the burden shifted to Vama to show that it served Defendants in accordance with UAE law.[49] Vama argues that since New Jersey shifted the burden of proof to Vama where Delaware would not, *res judicata* does not apply.

(17) But in this instance, the shift in the burden of proof had no impact on the New Jersey Order. The New Jersey court accepted as true all of Vama's factual assertions and based its nonrecognition decision on its holding that the proof of service in the Dubai proceedings failed to "meet our sense of due process" because serving notice on a receptionist is unacceptable.[50] Since the due process standards for notice and service are substantially the same in Delaware and New Jersey, the

---

[46] *Id.*

[47] N.J. Stat. Ann. § 2A:49A-16.4(d).

[48] *See* 10 *Del. C.* § 4803(d).

[49] A783-84.

[50] A785 ("It has been argued that UAE considers this sufficient due process and that should be enough. It is not. This type of process is 'repugnant to the public policy of this State or the United States.'").

Superior Court did not err in applying *res judicata* despite the difference in burden shifting between the Recognition Acts.

(18)   Finally, the Superior Court did not abuse its discretion when it denied Vama's requests relating to the Commissioner's Opinion and did not consider the merits of the Commissioner's Opinion.   The reasoning in the Commissioner's Opinion had no bearing on the Superior Court's basis for dismissal.   Further, because Vama's claim was barred by an out-of-state judgment, additional evidence relating to the merits of the barred claim would be irrelevant.

NOW, THEREFORE IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Tamika R. Montgomery-Reeves*
Justice

12